✓ FILED ___ LODGED
___ RECEIVED ___ COPY

SEP 0 1 2009

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

1  Sol Jaffe
2  In pro Se.
3  411 E. Indian School Rd #3073
4  Phoenix, At 85012
5  602-272-8300
6  Soljaffe@yahoo.com.    CV09-1821-PHX-MHB
7
8  United States District Court of Arizona.
9
10  Sol Jaffe,                     Case #
11     Plaintiff
                              Notice of Removal
12  Experian ut Steele Party, LLC    of Action
13     et al
      Defendants
14
15  To The Clerk of the United States District Court
16  Of Arizona:
17  Please take notice That Sol Jaffe (Plaintiff)
18  hereby removes to this Court The State
19  Court action described below.
20  This action is being removed. pursuant
21  to 28 USC 1332 / 28 UCS 2680 which
22  is under Federal Jurisdiction
23  28 USC 1332 - Diversity - Almost all Defendants
24  are out of State, three are out of Country
25  (Germany) and one is doing business in this
26  State without registering for same. The
27  sum amount of damages is in excess of
28  $200,000.00 at this time.
   28 UCS 2680. One Defendant (1st) is using the
   mail for fraudulent bills and JAFFE suing
   has filed fraud (See motion for reconsideration)
   and declaratory relief is requested for
   same.                          9/1/09

**In The Superior Court of the State Of Arizona
In and For the County Of Maricopa**

DEC 1 2008

# MANDATORY CIVIL COVER SHEET
## Pursuant to Maricopa County Local Rule 3.1(a)

CV2008-030307

This form is available electronically on the following website addresses:
http://www.clerkofcourt.maricopa.gov/faxondemand/CATALOG.htm (form #204) or http://www.superiorcourt.maricopa.gov/sscDocs/pdf/cv10f.pdf

| Plaintiff's Name (List additional on page 2) | Plaintiff's Attorney (Name and Bar Number) |
|---|---|
| Sol Jaffe | In Pro Se. |

Plaintiff's Address

411 East Indian School Road, #3073, Phx, Az 85012

Defendant's Name (List additional on page 2)

EMERGENCY ORDER SOUGHT: ☐TRO  ☐Provisional Remedy  ☐OSC  ☐Election Challenge  ☐Employer Sanction

☐Other (Specify)_____

Is there a need for Interpreter Services?  ☐Yes  ☐No   If yes, language type: _____

***DIRECTIONS: You must complete both Section I and Section II below. Section II continues on the 2nd page.***

## SECTION I. COMPLEXITY:

Rule 8(i) of the Rules of Civil Procedure defines a "Complex Case". Complex cases are civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties.

Place an "X" next to **no less than one** of the following options:
☐ **Involves Antitrust/Trade regulation**
☐ **Involves Construction Defect with many parties or structures**
☐ **Involves Mass Tort**
☐ **Involves Securities Litigation with many parties**
☐ **Involves Environmental/Toxic Tort with many parties**
☐ **Involves Class Action Claim(s)**
☐ **Involves Insurance Coverage Claims arising from one of the above listed case types**
☒ **This case is a Complex Civil Case as defined by Rule 8(i), ARCP**
☐ **None of the above**

## SECTION II. NATURE OF ACTION

Place an "X" in the box next to the number that describes the nature of the case. **ONLY** check **ONE** nature of action.

**100 TORT MOTOR VEHICLE**
☐101 Non Death Injury
☐102 Property Damage
☐103 Death

**110 TORT NON-MOTOR VEHICLE**
☐111 Negligence
☐112 Products Liability
☐113 Intentional
☐114 Property Damage
☐115 Legal
☒116 Other (Specify) Complex

**120 MEDICAL MALPRACTICE**
☐121 Physician - M.D.
☐122 Physician - D.O.
☐123 Hospital
☐124 Other (Specify)_____

**130 CONTRACTS**
☐131 Account (Open or Stated)
☐132 Promissory Note
☐133 Foreclosure
☐134 Other (Specify)_____
☐135 Real Property Excess Proceeds
**136-137 Construction Defects** (Residential/Commercial) (select one)
☐ 136 One to Nineteen Structures
☐ 137 Twenty or More Structures

Form #204  LRD 03/26/2008  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County

**SECTION II. NATURE OF ACTION - CONTINUED -**

**140  APPEAL or REVIEW – Use Clerk of Court's LC Appeals Coversheet**

**150 - 179  OTHER CIVIL**

☐150 Property Tax (A.R.S. §12-163(b))
   (ALL other tax matters must be filed in the AZ Tax Court)
☐151 Forcible Detainer
☐152 Change of Name
☐153 Transcript of Judgment
☐154 Foreign Judgment
☐155 Declaratory Judgment
☐156 Eminent Domain
☐157 Habeas Corpus
☐158 Quiet Title
☐159 Restoration of Civil Rights/Clearance of Record
☐160 Forfeiture
☐161 DES Instant Judgment
☐162 Harassment
☐163 Other (Specify) _____

☐165 Tribal Judgment
☐167 Structured Settlement (A.R.S. §12-2901)
☐169 Attorney Conservatorships (filed by the AZ State Bar)
☐170 Unauthorized Practice of Law (filed by the AZ State Bar)
☐171 Out of State Deposition for Foreign Jurisdiction
   (Commissions/Letters Rogatory ARCP 28(a)(b))
☐172 Secure Attendance of Prisoner
☐173 Assurance of Discontinuance
☐174 In State Deposition for Foreign Jurisdiction
   (Issuance of Subpoena/Subpoena Duces Tecum per ARCP 30(h))
☐175 Election Contest
☐176 Eminent Domain – LIGHT RAIL ONLY
☐177 Interpleader – AUTOMOBILE ONLY
☐178 Delayed Birth Certificate (A.R.S. §36-333.03)
☐179 Employer Sanction Action (A.R.S. §23-212/ARCP 65.2)

To the best of my knowledge, all information is true and correct.

_____
Signature of Attorney or Plaintiff

**ADDITIONAL PLAINTIFF(S):**

_____

_____

**ADDITIONAL DEFENDANT(S):**

see attached list

_____

# NOTICE

**PLEASE DO NOT INCLUDE THIS FORM WITH CASES THAT HAVE ALREADY BEEN FILED.
This form can only be processed at the time of filing New Complaints and Petitions.**

Thank you for assisting us with our efforts to improve service.

Form #204  LRD 03/28/2008  ALL RIGHTS RESERVED
© Clerk of Superior Court of Arizona in Maricopa County

## DEFENDANT LIST JAFFE VS EMPIRIAN STEELE PARK LLC

1. BUSH REALTY AT STEELE PARK, LLC

2. BUSH REALTY ASSOCIATES LLC

3. Sam Weiss

4. EMPIRIAN AT STEELE PARK, LLC

5. EMPIRIAN AT STEELE PARK MM, LLC

6. Ezra Beyman

7. EMPIRIAN PROPERTY MANAGEMENT, INC

8. Henry Heinemann

9. Neil Rackoff

10. Blimi Mayost

11. Ista North America, Inc.

12. Ista GMBH

13. Christoph Heymann

14. Walter Schmidt

15. Katie Brender

16. Jonathan Coates

17. Dominique Montoya

18. Helmar Fink

19. does 1-100

**COPY**

Sol Jaffe
411 East Indian School Road, #3073
Phoenix, Arizona  85012(602) 277-9300
Plaintiff in Pro Per

DEC  1 2008

MICHAEL K. JEANES, CLERK
M. VEJAR
DEPUTY CLERK

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

CV2008-030307

| | |
|---|---|
| SOL JAFFE, PLAINTIFF ) | Case Number |
| ) | |
| ) | |
| ) | **MOTION FOR COMPLEX CASE** |
| VS ) | **STATUS** |
| EMPIRIAN at STEELE PARK LLC, et al) | |

To whom it may concern:

Sol Jaffe (JAFFE) makes this herein motion to have this case placed into complex case status, pursuant to Rule 8i, for the following reasons:

1.   Three defendants are located in Germany and coordinating their pleadings will be extremely complex and this will require extra supervision from the presiding COURT.

2.   There are presently eighteen defendants in this case, and it is expected that some or all will be represented by separate attorneys and this will require extra supervision from the presiding COURT.

3.   There are three global areas of concern in this complaint (1. Landlord Tenant Act and related TORTS and Contract Violations-2. Fraud-Civil and Criminal and related TORTS and Contract Violations-3. Malicious Prosecutions and related TORTS and Contact Violations) and this will require extra supervision from the presiding COURT.

4.   There are claims that involve dangers to life and security and this will require

1

extra supervision from the presiding COURT.

5.   There is a criminal claim in this complaint seeking declaratory relief and this will require extra supervision from the presiding COURT.

6.   There will be an extreme amount of witnesses called to testify at trial and this will and require extra supervision from the presiding COURT.

7.   The defendants are generally uncooperative and this type of actions in this type of case has to be closely supervised and this will necessitate extra supervision from the presiding COURT.

The certificate of complexity is attached.

### CONCLUSION

JAFFE prays that the COURT will grant his case complex status for the reasons given above.

11/30/08

Sol Jaffe

### VERIFICATION

I, Sol Jaffe, Plaintiff do hereby declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

11/30/08

Sol Jaffe

2

**COPY**

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

DEC 1 2008

MICHAEL K. JEANES, CLERK
M. VIGIL
DEPUTY CLERK

| | | |
|---|---|---|
| Sol Jaffe | ) | Case No. ~~CV2008-030307~~ |
| _____ | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | [X] Certification of Complexity |
| vs. | ) | [ ] Joint Certification of Complexity |
| | ) | [ ] Contravening Certification |
| Empirian at Steele Park, LLC et al | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

[ X ]  **The (undersigned certifies) (parties certify) that this action is a complex case for the following reasons:**

[ ]  **Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve**

[X ]  **Management of a large number of witnesses or a substantial amount of documentary evidence**

[X ]  **Management of a large number of separately represented parties**

[ ]  **Coordination with the following related actions pending in one or more courts in other counties, states or countries, or in a federal court:**

[ ]  **Substantial post judgment judicial supervision**

[ ]  **The case would benefit from permanent assignment to a judge who would have acquired a substantial body of knowledge in a specific area of the law**

[ X]  **Inherently complex legal issues**

[X ]  **Factors justifying the expeditious resolution of an otherwise complex  dispute**

[X ]  **The following other factor(s) warranting designation as a complex case, in the interest of justice:**

**1. Foreign Defendants, Volume of Defendants, Global Issues, Criminal as well as Civil matters raised, harm to life,▰▰ and security claimed.**

] **The (undersigned certifies) (parties certify) that this action is not**
a **complex case for the following reasons:**

Dated this 30 day of _November_ 200 8 .

_Sol Jaffe_

_Sol Jaffe, Plaintiff in prose_

**(Attorney for) (Plaintiff) (Defendant)  (Attorney for) (Plaintiff) (Defend
ant)**

2

COPY

DEC 1 2008

NAME: _Sal Jaffe_

ADDRESS: _411 East Indian School Road_

CITY, STATE, ZIP: _Phoenix, AZ 85012_

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

_Sal Jaffe_

_____  )
                           )
_____  )   NO. ___CV2008-030307___
          PLAINTIFF,       )
                           )
                           )   **CERTIFICATE OF**
       vs.                 )   **COMPULSORY**
                           )   **ARBITRATION**
_Empires at Steele Park,_  )
_LLC, et al._              )
          DEFENDANT.       )
_____  )

The undersigned certifies that the largest award sought by the complainant, including punitive damages, but excluding interest, attorneys' fees, and costs (does) / does not exceed limits set by Local Rule for compulsory arbitration.  This case **is / is not** subject to the Uniform Rules of Procedure for Arbitration.

SUBMITTED this _1st_ day of _December_, 20 _2008_

BY _____

CCA

**Form #200  LRD 3/20/01  ALL RIGHTS RESERVED**
© Clerk of Superior Court of Arizona in Maricopa County

Sol Jaffe
411 East Indian School Road, #3073
Phoenix, Arizona 85012(602) 277-9300
Plaintiff in Pro Per



DEC 1 2008

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

| | | |
|---|---|---|
| SOL JAFFE, PLAINTIFF | ) | Case Number  CV2008-030307 |
| | ) | |
| VS | ) | Against each and Every Defendant For: |
| EMPIRIAN at STEELE PARK LLC et al | ) | |
| | ) | **Tort/Contract Action** |
| | ) | |
| | ) | SEE ATTACHED LIST |
| | ) | |
| SEE ATTACHED LIST | ) | |

**COMPLAINT**

Plaintiff, Sol Jaffe, herein after referred to as JAFFE, for his claims against the

Defendants named after, alleges as follows:

**JURISDICTION**

All events and causes of action took place at Empirian Steele Park Apartments at

411 East Indian School Drive, Phoenix, Arizona 85012.

1.  Plaintiff Sol Jaffe (JAFFE) is now, and at all times mentioned in this

    complaint is/was a resident of Maricopa County, State of Arizona.

2.  Defendant, BUSH REALTY AT STEELE PARK, LLC (hereinafter

    named as BUSH) maintains a domestic office at 7200 Manzanita Drive,

    Scottsdale, AZ. 85258 and an agent for service at Incorporating Services

    LTD 2601 North 3rd street, #202, Phoenix AZ 85004 (25% owner of

    Empirian at Steele Park Apartments).

1

3. Defendant BUSH REALTY ASSOCIATES LLC (A Domestic New York Corporation) (BUSH 2) is the only member of BUSH REALTY AT STEELE PARK LLC; and holds a foreign address of P.O. BOX 552, Brooklyn, NY 11211. It has no other address to accept process. It has no registered agent for process.

4. Defendant Sam Weiss (WEISS) is the managing member of BUSH and BUSH 2 who directed the actions, in a conspiracy with the other defendants, to cause the causes of action claimed in this complaint. WEISS'S present business address is 7200 Manzanita Drive, Scottsdale, AZ 85258.

5. Defendant EMPIRIAN AT STEELE PARK, LLC (EMPIRIAN) maintains an agent for service at CT Corporation System 2394 East Camelback Road, AZ 85016 and a foreign address of The Corporation Trust Company 1209 Orange Street, Wilmington, DE 1980;1 and a corporate address of 25 Phillips Parkway Montvale, NJ 07645 (75% owner of Empirian Steele Park  Apartments).

6. Defendant EMPIRIAN AT STEELE PARK MM, LLC (EMPIRIAN 2) is the only member of EMPIRIAN AT STEELE PARK LLC.  It has foreign address of The Corporation Trust Company 1209 Orange Street, Wilmington, DE 19801 and a corporate address of 25 Phillips Parkway Montvale, NJ 07645.

7. Defendant Ezra Beyman (BEYMAN) is the managing member (President) of EMPIRIAN and EMPIRIAN 2 who directed the actions, in a conspiracy

with the other defendants, to cause the causes of action claimed in this complaint. BEYMAN'S present business address is 25 Phillips Parkway Montvale, NJ 07645.

8.  Defendant EMPIRIAN PROPERTY MANAGEMENT, INC. (EMPIRIAN 3) is the property management company for EMPIRIAN/BUSH (1 and 2 respectively). It has a domestic agent for service of CT Corporation 2349 East camelback Road, Phoenix, AZ 85016 and a foreign address of Corporation Trust Company 1209 Orange Street, Wilmington, DE 19801. EMPIRIAN 3's present business address is 25 Phillips Parkway Montvale, NJ 07645.

9.  Defendant Henry Heinemann (HEINEMANN) is the sole owner of the 1000 shares of stock authorized and issued in EMPIRIAN 3 who directed the actions, in a conspiracy with the other defendants, to cause the causes of action claimed in this complaint. HEINEMANN'S present business address is 25 Phillips Parkway Montvale, NJ 07645.

10. Defendant Neil Rackoff (RACKOFF) is the President of EMPIRIAN 3 who directed the actions, in a conspiracy with the other defendants, to cause the causes of action claimed in this complaint. RACKOFF'S present business address is 25 Phillips Parkway Montvale, NJ 07645.

11. Defendant Blimi Mayost (MAYOST) is the only director of EMPIRIAN 3 who directed the actions, in a conspiracy with the other defendants, to cause the causes of action claimed in this complaint. MAYOST'S present business address is 25 Phillips Parkway Montvale, NJ 07645.

12. Ista North America, Inc. (ISTA) has a domestic address of 7825 Baymeadows Parkway, Suite 150, Jacksonville, florida 32256 and a domestic agent for service Resident Agents Arizona LLC 4643 East Thomas Road, #9, Phoenix, AZ 85018.  ISTA supplies utility services for Defendants previously mentioned; and is a co-conspirator in this complaint..

13. Ista GMBH is the parent company of ISTA (ISTA 2) and shall herein after be named as ISTA 2. It has no local address and/or agents and is located at 4 Grugaplatz, Essen, Germany 45131. ISTA 2 controls the actions of ISTA; and is a co-conspirator in this complaint..

14. Christoph Heymann (HEYMANN)is the chief executive officer of ISTA who directed the actions, in a conspiracy with the other defendants, to cause the causes of action claimed in this complaint and he has no local address. He is located at ISTA 2 at 4 Grugaplatz, Essen, Germany 45131 (The parent company); and is a co-conspirator in this complaint.

15. Hilmar fink (FINK) is President/CEO of ISTA who directed the actions, in a conspiracy with the other defendants, to cause the causes of action claimed in this complaint and he has a domestic address of 7825 Baymeadows Parkway, Suite 300B, Jacksonville, Florida 32256; and he is a co-conspirator in this complaint.

16. Walter Schmidt (SCHMIDT) is a Director of ISTA and the Chief Executive Officer of ISTA 2 who directed the actions, in a conspiracy with the other defendants, to cause the causes of action claimed in this

4

complaint; and he has no local address. He is located at ISTA 2 at 4 Grugaplatz, Essen, Germany 45131 (The parent Company).

17. Defendants Katie Brender (BRENDER), Jonathan Coates (COATES) and Dominique Montoya (MONTOYA) are all the site employees of one or more of the defendants that JAFFE has first hand knowledge of that acted in concert with the Defendants to commit the causes of action claimed in this complaint. They all work and/or reside at EMPIRIAN at 411 East Indian School Road, Phoenix, AZ 85012.

18. Does 1-100 is reserved for other defendants found in discovery. This case deals with an international conspiracy, amongst other claims, and is as complex as any case can become. All defendants named are named by JAFFE having personal knowledge of same and/or county and state records, and are dependent upon the Defendants providing accurate information to governmental agencies. JAFFE doubts this to be the case and expects the parties named to be updated after discovery is allowed to move forward. THE CORPORATE DEFENDANTS ARE ENGAGED IN COMPLEX LEGAL STRATEGIES TO UNDERMINE AND DISRUPT ANY LEGAL PROCESS USING THE INDIVIUALS TO DO THE ACTUAL ACTS VIOLATING CIVIL AND CRIMINAL LAWS.

19. The complaint is timely, as all events took place in 2007/2008.

20. This court has jurisdiction as all Defendants and Plaintiff, known at this time, either reside in Maricopa County, State of Arizona; and/or operate/control businesses that do same; and/or provide goods and

5

services to a company and/or individual who resides in same. All alleged

acts were committed in same.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

## SPECIAL NOTE TO COMPLAINT

**BUSH AND BUSH 2 AND EMPIRIAN AND EMPIRIAN 2, 3 and BEYMANN, HEINEMANN, WEISS, RACKOFF, MAYOST, BRENDER, MONTOYA, COATES** are all intertwined in some form with this herein mentioned conspiracy; and are bound together into that conspiracy. Thus, the notation of EMPERIAN in the body of this complaint, when it refers to EMPERIAN, actually refers to all the conspirators as a whole; both individuals and all other entities.

**ISTA and ISTA 2 and SCHMIDT and HEYMANN** are all intertwined in some form

with a conspiracy and are bound together into that conspiracy. Thus, the notation of ISTA

in the body of this complaint, when it refers to ISTA, actually refers to all the

conspirators as a whole; both individuals and all other entities.

**Defendants'** notation in the body of this complaint refers to both EMPIRIAN and ISTA

in the pejorative (This is only used in the second event/cause of action section related to

fraudulent billings of water/sewage/trash services conspiracy between Defendants).

Hopefully this will help suffice Rule 8, as it attempts to simplify the complaint for the

reader. International conspiracies amongst 19 defendants, with multiple claims and

events, are certainly hard to plead within Rule 8.  JAFFE believes that this pleading is the

best that one can do given the Defendants actions and the requirements of Rule 9.

★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★★

## I. LANDLORD TENANT ACT AND CONTRACT VIOLATIONS AND TORTS
### EVENTS (this is the first event section, of a total of three; and causes of action excludes Isla and its employees)

21. When JAFFE first decided to move to EMPIRIAN he kept asking for a

copy of the lease from 12/11/07 onward (Exhibit Page 1) and EMPIRIAN

refused to do so. They made JAFFE wait until the last minute, when

turning back would have been impossible for him to do so.

22. On or about 12/22/2008 EMPIRIAN produced the lease (Exhibits 2 and

3).  Obviously the lease was signed under duress and protest.  JAFFE

asked if he could add this statement to his signature and he was told "NO".

'Either sign as is or you do not move was their answer". So JAFFE signed

under duress and protest without the written notation. It should be obvious

to anyone that the contract, tendered by EMPIRIAN, at the last minute

was signed under duress and protest.  JAFFE moved into his apartment at

EMPIRIAN AT STEELE PARK across the next two days. It was a

disaster.

23. JAFFE was told the following falsehoods by COATES and MONTOYA,

before he moved in, under the direction of all other EMPIRIAN

Defendants:

A.  The main pool was heated and it was not.

B.  The grounds were kept clean and they were not.

C.  The gate key would open the security gate and it did not.

D.  The apartment was ready for move in and all appliances worked and

they did not.

E.  The air conditioning worked and it did not.

F.  The apartment was painted appropriately and it was not.

G.  The water was separately metered for each unit and it is not.

H.  JAFFE would have only have to pay extra for his use of the water,

sewage and trash removal at his apartment. This was a fraudulent

statement.

I.   The apartment is in a security building and it is not.

J.   JAFFE was not allowed to see the apartment before move in and it
became too late to look elsewhere when he finally gained admittance on
move in day.

K.   Maintenance is excellent and it is not. According to one maintenance
worker JAFFE talked to, the maintenance is backed up over six months
on some apartments.

L.   The 24 hour emergency number is available; however they did not
mention that, usually, no one shows up.

M.   Landscaping is beautiful; however they did not mention that it is
comprised of pet droppings and fleas and mosquitoes; which is quite a
bit different from their interpretation of beautiful landscaping.

N.   And so and so on.

24. JAFFE suffered/suffers from old age issues and hypertension and low
back pain. The move into EMPERIAN caused JAFFE to become
extremely ill. He was not able to function as a human being for several
months after the move. It took another two months to straighten out the
apartment.  JAFFE then terminated all conversations with EMPERIAN
and basically relied on the Landlord Tenant Act and faxes (one should
note that they never reply to anything in writing). Most of the on-going
present repairs and maintenance to JAFFE'S apartment are done by
JAFFE.

25. For the written part of the warranties by EMPERIAN (of which there are few-most were done verbally) note the Exhibit Pages 4-7; most of which are false and misleading, as noted above, and in the following paragraphs and documents in the attached Exhibits ( Fleas and Mosquitoes infestations, Code violations et al)

26. Sample letters from JAFFE to EMPERIAN are in the Exhibit Pages 8 to 17, in which JAFFE was asking for repairs and maintenance after the move in.

27. At present the violations have become more serious and certainly are more extreme. Please note the following:

A. Exhibits, pages 18 to 22 are examples of some of the 300+ tenant complaints JAFFE found about EMPERIAN on the internet. The complaints range from theft of funds charges to pest problems, repair and maintenance problems to structural problems. EMPERIAN'S actions are real and a danger to all tenants at this apartment complex.

B. Exhibits, pages 23- 32, are current photographs of the property taken in the middle of November 2008 and their code and health and safety violations and maintenance and repair problems. Note the structural faults in the parking garage which could kill and/or maim hundreds of tenants should it come down. Note the fire hose boxes which are not working and/or if the box did open there is no water pressure to the hose and/or if you go for a fire extinguisher you will not find one and/or you will find one that is empty. If there is a fire it will not only burn

EMPIRIAN to the ground, it will also take out the other homes in the area possibly killing hundreds of people. Note the exposed wiring fixtures waiting for someone to electrocute themselves. Note the cracked glass wall waiting to fall on someone and kill them. Note the urine and defecation matter allover the property causing a health hazard. Note the garbage flowing over on the first floor of the parking structure causing a health problem. Note the pool area flooded near electrical outlets waiting to electrocute someone. And so on and so on.  It is understood that the clarity of the pictures are a problem and they are on CD for discovery and trial purposes for that reason. The intent here is to the evidence some of the problems with EMPIRIAN. If a picture tells a thousand words the picture of EMPIRIAN IS A PICTURE of a building in Phoenix, Arizona which is getting ready to maim and/or kill human beings on a mass scale. Note as follows (page numbers are for appendix exhibits attached):

1.  Picture 1 page 23-fire extinguisher which is not charged. If a fire took place you would have nothing to extinguish it.

2.  Picture 2 page 23-door to fire hose will not open. Damaged door. If a fire took place you would have nothing to extinguish it.

3.  Picture 3 page 23- door to fire hose will not open. Damaged door. If a fire took place you would have nothing to extinguish it.

4.   Picture 4 pag2 23- FIRE EXTINGUIHER BOX WITH NO FIRE
     EXTINGUISHER. If a fire took place you would have nothing to
     extinguish it.

5.   Picture 5 page 24- FIRE EXTINGUIHER BOX WITH NO FIRE
     EXTINGUISHER. If a fire took place you would have nothing to
     extinguish it.

6.   Picture 6 page 24- Fire hose fully turned open. No water pressure
     to hoses. If a fire took place you would have nothing to extinguish
     it.

7.   Picture 7 page 24- sitting water in pools waiting to attract pests.

8.   Picture 8 page 24- sitting water in pools waiting to attract pests.

9.   Picture 9 page 25-defective water fountain equipment sitting for
     weeks uncovered waiting to attract pests.

10.  Picture 10 page 25-defective water fountain equipment sitting for
     weeks uncovered waiting to attract pests.

11.  Picture 11 page 25-pool areas covered with cigarette butts for days
     waiting for GOD knows what reason.

12.  Picture 12 page 25-defective pool equipment pouring water allover
     the floor and equipment. Originally fired up and smoke came out
     of it. Does not work but it is run for GOD knows what reason.
     Perhaps to electrocute an employee.

13.  Picture 13 page 26 Picture 12 page 25-defective pool equipment
     pouring water allover the floor and equipment. Originally fired up

and smoke came out of it. Does not work but it is run for GOD

knows what reason. Perhaps to electrocute an employee.

14. Picture 14 page 26- (another view) defective pool equipment

pouring water allover the floor and equipment. Originally fired up

and smoke came out of it. Does not work but it is run for GOD

knows what reason. Perhaps to electrocute an employee.

15. Picture 15 page 26- (another view) defective pool equipment

pouring water allover the floor and equipment with trash allover

the place. The area has turned to a sewer to attract pests. Originally

fired up and smoke came out of it. Does not work but it is run for

GOD knows what reason. Perhaps to electrocute an employee.

16. Picture 17 page 26 (hard to see)-part of glass mirror wall in gym

broken and is patched up with yellow tape. Waiting for wall to 't

come down and kill someone.

17. Picture 17 page 27-open electrical outlet with bare wires exposed

waiting for someone to electrocute someone. All the pictures of

open dangerous electrical outlets did not come out (three are in the

gym and it is dark there-yes open electrical outlets with bare wires

exposed waiting to kill someone).

18. Picture 18 page 27-broken security gate electrical mechanism just

hanging there for weeks on end providing a means for a child to

kill themselves and no security for the complex.

12

19. Picture 19 page 27- Open security gate for weeks on end providing no security for complex.

20. Picture 20 page 27- Open security gate for weeks on end providing no security for complex (another view).

21. Picture 21 page 28- Open security gate for weeks on end providing no security for complex.  Locks do not work.

22. Picture 22 page 28- Wire and nail used on bottom of floor of three story parking structure to hold it up. Will not work. Parking structure will come down.

23. Picture 23 page 28- Walkway to three story parking structure cracking out.

24. Picture 24 page 28- Walkway to three story parking structure cracking out.

25. Picture 25 page 29- Floor of three story parking structure separating and getting ready to come down.

26. Picture 26 page 29- Floor of three story parking structure separating and getting ready to come down.

27. Picture 27 page 29- Floor of three story parking structure separating and getting ready to come down.

28. Picture 28 page 29- Floor of three story parking structure separating and getting ready to come down.

29. Picture 29 page 30- open garbage cans in garage flowing over. There are about thirty of them creating a stink and attracting pests.

30. Picture 30 page 30- open garbage cans in garage flowing over. There are about thirty of them creating a stink and attracting pests.

31. Picture 31 page 30- garbage compact area. Usually overflowing and giving off a strong smell into the air. Again attracting pests.

32. Picture 32 page 30- urine stained and soaked grass attracting pests.

33. Picture 33 page 31- urine stained and soaked grass attracting pests.

34. Picture 34 page 31-pigeon defecation attracting pests.

35. Picture 35 page 31-animal defecation attracting pests.

36. Picture 36 page 31-animal defecation and urination attracting pests.

37. Picture 37 page 32- animal defecation and urination attracting pests.

38. Picture 38 page 32- pigeon defecation attracting pests.

39. Picture 39 page 32- pigeon defecation attracting pests.

C.  And if the above is not enough then Exhibits pages 31-38 delineate the City interventions in the past for EMPIRIAN'S code violations for fire department codes and public health codes. Note the following examples of why an outside oversight panel is necessary to insure the health and safety of the tenants of EMPIRIAN:

1.  Exhibit Page 35 noted that the gates did not close properly and on re-inspection they were fixed. This is not true, as they were eventually welded shut.  A rush job by the CITY; but in the end it all worked out as welded shut gates do not have the problems of locked gates. They also do not have access available in case of emergency. That does not seem to be of any concern to

14

EMPIRIAN.  The need for outside supervision of their work, as requested in this complaint, should be duly noted.

2.  Exhibit Page 36 notes that the pool was closed because the heat exchanger was defective. The heat exchanger still does not work; as noted/pictured above in paragraphs 14 and 15. Outside supervision of their work is noted herein.

3.  Exhibit Pages 37-38 relate to some fire department code problems still on going. Back in 2005 there were empty fire extinguisher boxes and these were removed. There were, supposedly, thefts of fire extinguishers but there was one in each unit and in common areas. As noted above the fire extinguisher boxes are still in place and empty; and there are not fire extinguishers in each unit (as told to JAFFE by other tenants); and there are missing fire extinguishers from common areas and some fire extinguishers, even if they are mounted, are not working anyways. After over three years, the problems have gotten worse and not better. The latest reports will not be available until after this complaint has been filed

D.  . EMPIRIAN has taken advantage of the State and City inspectors as they realize that the State and City are short staffed and cannot possibly control all the complaints they have (some have 3000+ complaints per each employee and are years behind in inspections). This only fuels EMPIRIAN to commit TORTS without recourse except to the COURTS. Which most tenants cannot or will not do. This COURT must act to protect the citizens of this State and County from this type of civil and criminal behavior on the part of EMPIRIAN.

E.  In some cases JAFFE does understand that when the CITY calls EMPIRIAN before they come out for a complaint, that EMPIRIAN fixes the complaint items before the inspection.  Then, and only then, does EMPIRIAN may fix things. They will not fix things because of a Tenant complaint. This means that EMPIRIAN must have constant outside

oversight, on a daily basis, as requested in this complaint, to finally fix things so that tenants' lives and health are not put at risk.

F.  It does not matter whether you take JAFFE'S claims as being truthful, or you take other tenants claims as being truthful, the actual pictures of the problems and violations, and the few government reports certainly cannot be denied-EMPIRIAN has violated JAFFE'S rights under the Landlord Tenant Act/Contract/Tort Law and they have concealed these facts from JAFFE prior to his move into the apartment complex. All to JAFFE'S harm.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF ARIZONA STATUTES, TITLE 33, CHAPTER 10

28. Plaintiff re-alleges each and every allegation contained in paragraphs 1 thru 27 and all following paragraphs of this complaint as if fully set forth herein.

29. As per ARS 33-1303, the violations of Chapter 33, supplements TORT litigation; and thus they are properly brought before this COURT, in this action.

30. As per ARS 33-1305 gives JAFFE the right to file lawsuit for his grievances under this Chapter.

31. As per ARS 33-1321(F) JAFFE has a right to litigate for damages, as found herein.

32. As per ARS 33-1324 (A) (1-6). EMPIRIAN must comply with all building codes materially affecting health and safety and to make repairs to make the premises fit and habitable, and to keep all common areas clean and safe; and to maintain all the plumbing, electrical et al in good working order; and to maintain trash receptacles for the convenience of the tenants; and to supply heat and air conditioning where it is offered. On all these

16

counts EMPIRIAN has failed to perform as per ARS 33-1361; and in addition to other remedies, JAFFE may recover damages and injunctive relief, which he intends to do.

33.  As per ARS 33-1364 (A) (1-3) JAFFE has/had a right to repair the ARS 33-1324 violations; and to seek reasonable amounts of monies for reimbursement. Fixing the violations found are too expensive for JAFFE to fix; and alternative housing, while the apartment complex becomes habitable is also too expensive for JAFFE; and will not have mitigated the damages as JAFFE is required to do.  JAFFE can only file this complaint and seek relief/damages for the necessity for him to do same; and for other damages according to proof at time of trial. JAFFE presently moves about the property in fear of life and limb for himself and others.

34.  As a direct and proximate result of the EMPIRIAN'S violations of Arizona statutes, Title 3, Chapter 10, relating to the Landlord Tenant Act JAFFE has been damaged emotionally, physically and monetarily; and this is on going at this time.

35.  For damages requested see DAMAGE SECTION which follows.

## CAUSES OF ACTION

## SECOND CAUSE OF ACTION

## GROSS NEGLIGENCE

36. Plaintiff incorporates by reference paragraphs 1 thru 35 and all following paragraphs of this complaint as if fully set forth.

37.   At all material times EMPIRIAN was, and are still managing, leasing and/or selling real property in the State of Arizona, County of Maricopa.

38.   At all material times, there existed a contractual relationship between the Parties.  JAFFE has a lease dated 12/23/07, and an extension of same signed in August of 2008, indicating that they are liable in a COURT of Law for their TORTS and/or violations of the Arizona Landlord Tenant Act/Contracts.

39.   JAFFE was/is a tenant of EMPIRIAN for the purpose of renting an apartment, without the commission of TORTS and violations of the Contract and Landlord Tenant Act pertaining to same.

40.   At all times mentioned EMPIRIAN owed JAFFE a duty of reasonable care for repairs/maintenance/safety of his apartment by competent repair/maintenance personnel; and not care composed of the TORTS that violated his sense of safety and life.

41. The EMPIRIAN failed to provide competent maintenance and/or repairs for his apartment complex; and instead provided none to sub-normal repairs and maintenance which destroyed the property. JAFFE'S only recourse is to file this herein complaint for relief of the EMPIRIAN'S commission of TORTS in order to mitigate his damages.

42.   EMPIRIAN committed gross negligence by the following actions:

A. They allowed a parking structure which could kill hundreds to remain in place after the defects became evident to the naked eye.

B. EMPIRIAN did not and or would not repair the electrical connections throughout the property which were defective to the naked eye which could electrocute someone.

C. EMPIRIAN did not or would not provide ample water pressure to the fire system in the building; and in case of a fire the complex and all the surrounding buildings could burn down causing millions in damages and hundreds of human lives.  Also fire extinguishers are missing and/or empty and/or the boxes to maintain fire hoses are so damaged that they cannot be open even if water was available-which it is not

D. EMPIRIAN did not or would not clean up after the pets they allowed the tenants to have, causing environmental smells to reach a point of nausea, due to the levels of urine and defecation in the air; and pests due to their attraction to same.

E. EMPIRIAN did not or could not provide security for the building as they did not know how to repair gates which would not lock, which in turn could allowed the criminals public free access to the building.

F. EMPIRIAN did not or could not provide trash receptacles and/or controls which would not flow over and bring pests in to the complex along with foul air.

G. EMPIRIAN did not or could not provide normal maintenance and repairs for the property; and now it is deteriorated to the point of being a constant threat to life and limb of the tenants. There is/was no end to the repair and maintenance problems at the building. JAFFE was told by an ex-employee

that some apartment repairs were taking over six months to fix and that

EMPIRIAN were renting to the disabled, apartments which were not equipped

for same, causing disabled tenants to injure themselves. And he was afraid to

come to work as he feared that someone would die here. He eventually quit.

H. EMPIRIAN did not or could not properly provide maintenance for the

swimming pools. Either they had too much Chlorine in the pool and/or they

only used Chlorine to maintain the pool chlorine which caused JAFFE'S eyes

to burn when he entered same; and/or they provided no chemicals and the

pools were filled with dead insects and/or dead leaves; and/or they failed to

provide locks for the gates bringing a constant danger to the children in the

complex; and/or they failed to maintain the equipment bringing further danger

to the employees and the tenants of the complex.

I. EMPIRIAN did not provide any type of normal/ adequate relief, for their

TORT actions before this lawsuit was filed.  They are, and were, arrogant in

their TORT actions.  They knew and/or should have known that they were

doing wrong; and instead they continued/continue in their TORT actions. The

Defendants actions were reckless, vile, wonton and destructive.

J.  EMPIRIAN, at this stage, is either saying/writing nothing and/or is stating

that they acted correctly by their lack of response.

K.  As a direct proximity result of  EMPIRIAN'S gross negligence, JAFFE

suffered emotional and bodily injury (elevated hypertension, loss of sleep et

al), experienced severe pain and suffering (fearing that he or someone else

would die here), and a loss of capacity for the enjoyment of life; and JAFFE

will incur extra expense for medication for his physical and emotional problems while living here for the damages, caused by EMPIRIAN, to his health; JAFFE will also have to endure the inability to gain employment, for a period of time, as a direct result of the EMPIRIAN'S actions. The losses are continuous; and JAFFE will suffer all losses into the future.

42 A. For damages requested see DAMAGE section following this section.

## THIRD CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

43. **Plaintiff** incorporates by reference paragraphs 1 thru 42 A and all following paragraphs of this complaint as if fully set forth.

44. During the course of JAFFE'S contractual relationship with EMPIRIAN, for apartment rental services; all defendants misrepresented their apartment rental services in the following manner:

    a. One only has to look at the EMPIRIAN'S web site, and one can easily discern that they represent themselves as providing excellent, considerate and safe services; that are without harm and without defects; and that their personnel are qualified and professional and normal. These and more qualifying statements are made by the leasing staff leaving only the spoken work for memorization. They normally never put anything in writing. These are all fraudulent statements, as their services are/were of a vile and wonton and reckless nature; and in no way can they be

considered qualified and/or professional and/or normal. The
information they provide is fraudulent.

b.   EMPIRIAN stated that they would perform the services that
JAFFE bought, and that they contracted to provide, in a manner
dictated by the contract (without TORTS committed). This was a
fraudulent statement.  They must have known and/or should have
known that their systems and employees were faulty at the time of
entering into the contract with JAFFE; and that said faults could
and would cause JAFFE harm; and they failed to mention same.

c.   There is/was an implied warranty that they would not commit
TORTS when JAFFE agreed to EMPIRIAN'S services; the
defendants warranty was obviously fraudulent.  Their web site
should be considered a written warranty of fraudulent statements;
and this goes to the heart of this case. They are simply frauds
trying to get rich at the expense of their tenants.

d.   EMPIRIAN stated that they would abide by all contracts,
statements et al, both verbal and written, as to the apartment rental
service provided. This is/was a fraudulent statement.

e.   EMPIRIAN'S statements, implied and in writing, that no harm
would come to JAFFE, by the use of their services, was a
fraudulent statement.

f.   EMPIRIAN'S statements, implied and in writing, that they would
tell the truth and not conceal and conspire to provide defective

and/or below acceptable rental services, was a fraudulent

statement.

g.   EMPIRIAN put JAFFE into a high medical risk situation,

without notifying him of their intended actions before they

committed them.  They must have known of their problems before

hand, or should have known of same, as measured by how many

complaints and law suits they are involved in; and they failed to

notify JAFFE of same.

44. When EMPIRIAN made the above described representations of fact

JAFFE, JAFFE had no reasonable grounds for believing that the

representations were false; and the EMPIRIAN had no reasonable grounds

for believing they were true.  EMPIRIAN'S representations were made

with the intent that JAFFE rely on them; and JAFFE did reasonably rely

on them; all to JAFFE'S detriment.

45.  In making such representations of fact, and suppressing and failing to

disclose facts material to JAFFE in his contractual relationship with

EMPIRIAN, as described in paragraphs 1 thru 42 A above and all

following paragraphs EMPIRIAN negligently misled JAFFE, about their

ability to perform, as they represented they would, the services they were

providing. The EMPIRIAN knew, and/or should have reasonably known,

that JAFFE would rely on their representations; and that EMPIRIAN'S

failure to disclose such facts material to JAFFE about their rental services

would cause JAFFE harm. JAFFE did rely on EMPIRIAN'S

misrepresentations; and their failure to disclose material facts, all to JAFFE'S detriment.

46. As a direct result and foreseeable result of EMPIRIAN's negligent misrepresentations, JAFFE has experienced emotional and physical distress and pain and suffering and monetary damages.

47. For damagers requested see DAMAGE SECTION following this cause of action section.

### THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

48. Plaintiff incorporates by reference paragraphs 1 thru 47 and all following paragraphs of this complaint as if fully set forth.

49. In December of 2007, and the extension entered into in August of 2008, the EMPIRIAN and JAFFE entered into a rental contract, by which EMPIRIAN agreed to provide JAFFE a safe and non-tort laden apartment rental. Pursuant to the agreement, JAFFE paid for same. EMPIRIAN failed to honor the agreement. The total damages claimed will be shown, according to proof at time of trial.

50. JAFFE received unsafe and hazardess rental services which have caused JAFFE severe emotional and physical distress, and pain and suffering, and loss of income et al, according to proof at time of trial.

51. JAFFE has spent months with EMPIRIAN stating the violations of their contract with him; and asking for relief for same. All of this was to no avail, as there is no responsible party at EMPIRIAN to talk to any further.

24

They simply do not respond and/or they respond with falsehoods and/or more sub-normal repairs and maintenance. They even tried to evict JAFFE for his actions.

52.   JAFFE did not contract to receive the TORTS that damaged his health et al, as found in this complaint, with EMPIRIAN.  EMPIRIAN violated their contract with JAFFE by committing the TORTS, as claimed in this complaint.

53.   JAFFE is informed and believes, at this time, that all of the TORTS, claimed in this complaint, were intentional; as they knew at the time of agreeing to provide JAFFE with an apartment rental, that said apartment rental was filled full of sub-human, non-safe and treacherous conditions; JAFFE was never informed of any of this prior to the signing of the contract; and then he was subjected to the EMPIRIAN'S TORTS.

54.   EMPIRIAN breached all written and oral agreements that they had together with JAFFE.

55.   As a direct and proximate result of EMPIRIAN'S breach of contract, JAFFE has suffered damages emotionally, physically and monetarily.

56.   For Damages requested see DAMAGE SECTION that follows.

### FIFTH CAUSE OF ACTION

### FRAUD

57. Plaintiff incorporates by reference paragraphs 1 thru 56 and all following paragraphs of this complaint as if fully set forth.

58.   On or about December 22, 2007 EMPIRIAN, with on going agreements
to date forward, JAFFE entered into said agreements with EMPIRIAN for
an apartment rental, because EMPIRIAN represented to plaintiff that they
could and would provide JAFFE a human, safe and non-hazard filled
apartment rental; and that said, their services would not damage his health
et al. These guarantees were explicit/implicit in the rental agreements.
JAFFE is informed, and now believes, and on the basis of such
information and beliefs, that the true facts, as are detailed in paragraphs 1
thru 56 above and all following paragraphs, that EMPIRIAN knew that
they could not guarantee safe and non-hazard filled apartment rentals, as
they agreed to provide; and they entered into the agreement in order to get
JAFFE'S money; and they would say and do anything to get money from
anyone. And they would do anything to save costs; up to and including the
commission of the Fraud found in this complaint.  JAFFE was simply a
straw; and they went on to DAMAGE JAFFE, according to proof at time
of trial.  His healths, and other problems, are ongoing.

59.   When EMPIRIAN made their representations, they knew them to be
false; and these representations were made by EMPIRIAN with the intent
to defraud and deceive JAFFE to act in a manner herein alleged. They
violated the rental contract and their own written statements found on the
web. They did nothing that they claimed they would do; and this was done
intentionally to get JAFFE'S money for providing sub-standard/human
services.

26

60.   JAFFE, at all times of the aforementioned representations were made by EMPIRIAN, believed them to be true; and therefore was induced to, and did allow JAFFE to provide an apartment for him; and to pay them for same. In the end the rental services caused the JAFFE Damages according to proof at time of trial; and in addition to the monetary issues, JAFFE has also suffered an extreme amount of emotional and physical damages and pain and suffering. Had JAFFE known the actual facts about EMPIRIAN'S services et al, he would not have contracted for same. JAFFE'S reliance upon EMPIRIAN'S representations was justified as they, EMPIRIAN, provided no information to the contrary.  It is/was unfathomable to JAFFE that EMPIRIAN would risk so much for so little return. EMPIRIAN has proven that they are reckless beyond belief; and that they are belligerent in their belief that they can get away with anything.

61.   For Damages see DAMAGE SECTION which follows.

## SIXTH CAUSE OF ACTION

## CONCEALMENT

62. Plaintiff incorporates by reference paragraphs 1 thru 61 and all following paragraphs in this complaint as if fully set forth.

63. On or about December 22, 2007, with on going agreements to date forward, JAFFE entered into a contract for an apartment rental with EMPIRIAN; and they made representations to JAFFE that they

27

would/could provide human, safe and non-hazard filled apartment rentals; and they did not as mention the events found in paragraphs 1 thru 61 above; and all following paragraphs below. At all times that JAFFE was subjected to the EMPIRIAN'S TORT actions, herein alleged, JAFFE was ignorant of the existence of the facts that EMPIRIAN had suppressed, and or failed to disclose.  If JAFFE had been aware of the existence of the facts, not disclosed by EMPIRIAN, he would not have entered into any contractual relationship with them for any type of services what so ever.

64.  JAFFE'S reliance upon the EMPIRIAN'S false and misleading representations has caused JAFFE severe emotional and physical and monetary damages.

65.  For damages requested see damage section which follows.

**SEVENTH CAUSE OF ACTION**

**BREACH OF EXPRESS WARRANTY**

66. Plaintiff re-alleges each and every allegation contained in paragraphs 1 thru 65 and all following paragraphs in this complaint as if fully set forth herein.

67.  JAFFE accepted EMPIRIAN'S tender of apartment rental services.

68.  At all times of the aforementioned contract for apartment rental services, but before the agreements were consummated between the parties, as an inducement to JAFFE to purchase said apartment rental services, and as apart of the basis of the bargain of the parties that culminated in the making of the agreements, and to accept same, EMPIRIAN warranted that

the services would not be sub-human, un-safe and hazard filled, and

dangerous to JAFFE'S health et al; and that their services would conform

to their affirmations. Their warranties were fraudulent.

69.   JAFFE agreed to purchase said services, and agreed to accept said

services from EMPIRIAN, in reliance upon each of said warranties,

affirmation of facts, and/or promises made by EMPIRIAN, as herein set

forth in this complaint.  JAFFE has fully performed all the conditions and

covenants of the agreements on JAFFE'S part to be performed.

70.   Prior to date, while JAFFE was receiving, and/or not receiving,

apartment rental services in a manner and purpose for which they were

intended to be done, JAFFE discovered that the services were not as

warranted by EMPIRIAN, as herein alleged, in that the services were sub-

human, unsafe, hazard filled and dangerous to his safety/health and well

being.

71.  On or about 08/08 onward, which was a reasonable time after JAFFE first

suspected that anything was wrong, not fully understanding the full depths

of the structural problems until this herein date, began to discuss

complaints with other tenants and came to the realization that their actions

were universal to everyone of their tenants. EMPIRIAN refused to keep

the apartment, that JAFFE has rented, complaint free. They do not respond

to complaints, and when they do, the damages have been done and/or they

provide more damages by doing sub-standard/normal work. EMPIRIAN

has refused to reply to any/all requests for normalcy and/or has provided

falsehoods and/or simply do not seemed to be concerned; all in all, they
are adamant in being sued before providing any relief.

72. JAFFE is informed and believes, and based on such information and
beliefs, alleges that at the time and place of the acceptance of the purchase
of services from EMPIRIAN, the services that were tendered, were of a
sub-standard/inhuman nature, unsafe and filled with hazards that
would/did cause damage to JAFFE'S safety, health and well being.

73. JAFFE has a direct and proximate breach of warranty claim, herein
alleged, and has been damaged as a result of EMPIRIAN'S breach of
warranty.

74. For DAMAGES requested see DAMAGES SECTION which flows.

**II. FRAUDULENT WATER/SEWER/TRASH BILLINGS (this is the
second event section, of a total of three; and causes of action are against all the
Defendants and their employees, as previously named and defined.
Defendants refers to both EMPIRIAN and ISTA)**

75. When JAFFE first decided to move to EMPIRIAN JAFFE received a
move in reservation document (Exhibit page 39 ) which notes that
EMPIRIAN is going to use an outside billing company, ISTA, to provide
billing for water/sewage and trash which will be billed separately from the
rental contract; and will be based upon the amount of water JAFFE uses,
as metered from his apartment home. The apartments were separately
metered for same according to EMPIRIAN. This was verified by

COOMBS and MONTOYA.  JAFFE agreed to pay for what he used, in addition to his rent.

76. Upon receiving the first few statements from ISTA (Exhibit pages 40-41) he started to e-mail them for answers to his questions as he felt that the amount of water used was too high for a single person living alone and using the YMCA for showering et al. JAFFE also wanted to know about the service change for billing as this seemed high for such a small bill. JAFFE could not get a written reply; and the e-mail service is through ISTA and does not allow JAFFE to retrieve a copy for his records.

77. After waiting weeks and receiving no reply JAFFE took a few hours and got them on the phone.  They said that they were only a billing service and they got all the information from the bill from EMPIRIAN; and that it came directly off the meter from his apartment.  There could be no mistakes. JAFFE asked about the additional billing change and they said that this is what they charge and that was that. JAFFE decided to let the matter go as the water he was paying for came off the meter; and that was that and there was no way he would be given a copy of their trash pick up service contract without a lawsuit being filed; and this did not seem to be prudent for JAFFE to do. As for the service change for billing, again, JAFFE felt the amount was too low for JAFFE to file a lawsuit over.

78. At the end of September JAFFE received a new bill from ISTA raising the service charge to $5.00 from $3.73 and the Trash service Charge from $5.00 to $9.00 (Exhibit page 42). At the bottom of the bill it stated that

31

EMPIRIAN had decided to raise the fees and gave JAFFE a number to call. JAFFE called the number and got no answer. JAFFE then tried to reach ISTA and got no answer, so he sent a letter stating that he disputed the bill and he demanded documentation for all the charges (Page 43). They never replied.  However EMPIRIAN replied by trying to evict JAFFE, which is set forth in the third set of events and claims below. To date, no one has ever replied to JAFFE'S request for documentation.

79. JAFFE then began to look at all the billings and found that the bills did not compute; compare the first bill (Exhibit Page 40) and the charge of .39 for 180 gallons of water and $1.66 for sewage and then look at the next bill (Exhibit page 41) and the charge of $5.00 for 1740 Gallons of water and $7.49 for sewage. It does not add up. And after looking at all the bills one can easily see that even the intial the charges are fraudulent.

80. JAFFE then called the water company and found out that EMPIRIAN is not separately metered for water. All statements by ISTA and EMPIRIAN and their employees were also fraudulent in this regard.

81. The water company also gave JAFFE the actual charges for water ($2.20 for 748 gallons) and sewage ($4.64 for 4550 gallons). The bills from ISTA and EMPIRIAN are fraudulent.

82. The trash bill could not be verified as this will have to wait until the discovery stage of litigation. It is privately contracted for.

83. ISTA is not a billing company (Exhibit page 44  ). It is a Multi-Billion Dollar utility servicing company, owned by a British Investment

Company, operating on all continents, and headquartered in Germany. It is inconceivable that they are/were simply receiving numbers from EMPIRIAN and passing them along to JAFFE; as JAFFE was told. The statements were fraudulent.  And the Fraud was perpetrated by a conspiracy between all the Defendants.

84. EMPIRIAN is a giant of a company owning and/or managing over 40,000 units in the United States (Exhibit page 7). The size of the fraud is not just pennies; it is in the millions and warrants a lawsuit being filed for same. JAFFE is acting prudently in filing this lawsuit at this time.

85. The Defendants (EMPIRIAN/ISTA) also used the United States Postal Service in committing their fraudulent acts and this is a criminal act (28 USCS 2680).  JAFFE cannot pursue this as an individual; and that is why JAFFE is asking the COURT in the declaratory relief section of this complaint to refer this matter to the United States Attorney General for investigation.  JAFFE would be remiss as an American Citizen if he did not do this.  It is important to stop criminal actions against American citizens.

**FIRST CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS**

86. Plaintiff incorporates by reference paragraphs 75 thru 85 and all following paragraphs of this complaint as if fully set forth.

87. During the course of JAFFE'S contractual relationship with all the

Defendants, for water/sewage/trash services;  all Defendants

misrepresented their services by making the following false statements:

    1. The water utilities were separately metered for each apartment.

       This is false.

    2.  The water is billed for your usage only. This is false.

    3. The water bill comes from a meter on your unit and the charges are

       from the water company. This is false.

    4. EMPIRIAN relies on ISTA for the billing of the water services

       only.  This is false.

    5. ISTA relies on EMPIRIAN for the billing of the water services.

       This is false.

88. When the Defendants made the above described representations of fact to

plaintiff, plaintiff had no reasonable grounds for believing that the

representations were false; and the Defendants had no reasonable grounds

for believing they were true.  Defendants' representations were made with

the intent that plaintiff rely on them; and plaintiff did reasonably rely on

them; all to plaintiff's detriment.

89. In making such representations of fact, and suppressing and failing to

disclose facts material to JAFFE in his contractual relationship with

defendants, as described in the previous paragraphs, and all following

paragraphs, the Defendants negligently misled JAFFE, about their ability

to perform, as they represented they would, the services they were

providing. The Defendants knew, and/or should have reasonably known, that JAFFE would reply on their representations; and that the Defendants' failure to disclose such facts material to JAFFE about their rental services would cause the plaintiff harm. JAFFE did rely on Defendants' misrepresentations; and their failure to disclose material facts, all to plaintiff's detriment. As a direct result and foreseeable result of the Defendants' negligent misrepresentations, JAFFE has experienced emotional and physical distress and pain and suffering and monetary damages.

90.  For damagers requested see DAMAGE SECTION following this cause of action section.

### SECOND CAUSE OF ACTION

### BREACH OF CONTRACT AGAINST ALL DEFENDANTS

91. JAFFE incorporates by reference paragraphs 75 thru 90 all following Paragraphs of this complaint as if fully set forth.

92. In December of 2007 the Defendants and JAFFE entered into a rental contract, by which Defendants agreed to provide the plaintiff extra billings for water and sewage and trash services as he used them.

93.  JAFFE received fraudulent billings for water and sewage and trash services which have caused JAFFE severe emotional and physical distress, and pain and suffering, and loss of income et al, according to proof at time of trial.

94.  JAFFE has spent months with the Defendants stating the violations of their contract with him; and asking for relief for same. All of this was to no avail, as there is no responsible party at EMPIRIAN/ISTA to talk to any further. They even tried to evict JAFFE for his actions.

95.  JAFFE did not contract to receive the fraudulent billings, as found in this complaint, with the Defendants.  The Defendants violated their contract with JAFFE by committing fraud, as claimed in this complaint.

96.  JAFFE is informed and believes, at this time, that all of the fraudulent billings, claimed in this complaint, were intentional; as they knew at the time of agreeing to provide JAFFE with same that they were fraudulent. Plaintiff was never informed of any of this prior to the signing of the contract; and then he was subjected to the Defendants' FRAUD.

97.  Defendants breached all written and oral agreements that they had together with Plaintiff.

98.  As a direct and proximate result of defendants' breach of contract, plaintiff has suffered damages emotionally, physically and monetarily.

99.  For Damages requested see DAMAGE SECTION that follows.

### THIRD CAUSE OF ACTION

### FRAUD AGAINST ALL DEFENDANTS

100.     JAFFE incorporates by reference paragraphs 75 thru 99 and all following paragraphs of this complaint as if fully set forth.

101.     On or about December 22, 2007 the Defendants, with on going agreements to date forward, the Plaintiff entered into said agreements with

36

the Defendants for an apartment rental and billing for water/sewage/trash services, because the Defendants represented to JAFFE that they could and would provide JAFFE with billing for said services as he used them; and that said, their services would not be fraudulent. These guarantees were explicit/implicit in the rental agreements. JAFFE is informed, and now believes, and on the basis of such information and beliefs, that the true facts, as are detailed in paragraphs 1 thru 99 above and all following paragraphs, that the Defendants knew that they could not guarantee billing for services as they agreed to provide; and they entered into the agreement in order to get JAFFE'S money; and they would say and do anything to get money from anyone. And they would do up to and including the commission of the Fraud found in this complaint.  JAFFE was simply a straw; and they went on to DAMAGE JAFFE, according to proof at time of trial.

102.     When defendants made their representations, they knew them to be false; and these representations were made by the Defendants with the intent to defraud and deceive JAFFE to act in a manner herein alleged. They violated the rental contract and their own written statements found on the web. They did nothing that they claimed they would do; and this was done intentionally to get JAFFE'S money for providing fraudulent billings for water/sewage/trash services. The problems are on-going.

103.     JAFFE, at all times of the aforementioned representations were made by the Defendants, believed them to be true; and therefore was

37

induced to, and did allow the Defendants to provide water/sewage/trash services for him; and to pay them for same. In the end the services caused the JAFFE Damages according to proof at time of trial; and in addition to the monetary issues, JAFFE has also suffered emotional and physical damages and pain and suffering. Had JAFFE known the actual facts about the Defendants services et al, he would not have contracted for same. JAFFE'S reliance upon the Defendants representations was justified as they, the defendants, provided no information to the contrary. It is/was unfathomable to JAFFE that the Defendants would risk so much for so little return. The Defendants have proven that they are reckless beyond belief; and that they are belligerent in their belief that they can get away with anything.

104.      For Damages see DAMAGE SECTION which follows.

## FOURTH CAUSE OF ACTION

## CONCEALMENT AGAINST ALL DEFENDANTS

105.      JAFFE incorporates by reference paragraphs 75 thru 104 and all following paragraphs in this complaint as if fully set forth.

106.      On or about December 22, 2007, with on going agreements to date forward, JAFFE entered into a contract for an apartment rental and water/sewage/trash services with the defendants; and they made representations to JAFFE that they would/could provide separate water/sewage/trash services billings separately from his rent; and that he would only have to pay for his usage alone.; and they did not as mention

38

the events found in paragraphs 1 thru 104 above; and all following paragraphs below. At all times that JAFFE was subjected to the Defendants' FRAUD actions, herein alleged, JAFFE was ignorant of the existence of the facts that the Defendants had suppressed, and or failed to disclose. If JAFFE had been aware of the existence of the facts, not disclosed by the Defendants, he would not have entered into any contractual relationship with them for any type of services what so ever.

107.     JAFFE'S reliance upon the Defendants false and misleading representations has caused JAFFE emotional and physical and monetary damages.

108.     . For damages requested see damage section which follows.

### FIFTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

109.     JAFFE re-alleges each and every allegation contained in paragraphs 75 thru 108 and all following paragraphs in this complaint as if fully set forth herein.

110.     JAFFE accepted Defendants' tender of apartment rental services.

111.     104. At all times of the aforementioned contract for apartment rental services, but before the agreements were consummated between the parties, as an inducement to plaintiff to purchase said apartment rental services, and as apart of the basis of the bargain of the parties that culminated in the making of the agreements, and to accept same, the Defendants warranted that the services of the billing of the

water/sewage/trash services would be only for his own usage; and would not be fraudulent as they actually provided. Their warranties were fraudulent.

112.     JAFFE agreed to purchase said services, and agreed to accept said services from the Defendants, in reliance upon each of said warranties, affirmation of facts, and/or promises made by the Defendants, as herein set forth in this complaint.  JAFFE has fully performed all the conditions and covenants of the agreements on JAFFE'S part to be performed.

113.     Prior to date, while JAFFE was receiving, and/or not receiving, apartment rental services for water/sewage/trash services in a manner and purpose for which they were intended to be done, JAFFE discovered that the services were not as warranted by the Defendants, as herein alleged, in that the services were Fraudulent.

114.     On or about 09/08 onward, which was a reasonable time after JAFFE first suspected that anything was wrong, not fully understanding the full depths of the deceit, lies, cheating and cover-up until this herein date, began to investigate the issues. The Defendants have refused to cooperate in same. They did not respond to complaints. The Defendants have refused to reply to any/all requests for normalcy and/or have provided falsehoods and/or simply do not seemed to be concerned; all in all, they are adamant in being sued before providing any relief.

115.     JAFFE is informed and believes, and based on such information and beliefs, alleges that at the time and place of the acceptance of the

purchase of services from the Defendants, the services that were tendered, were Fraudulent and the Defendants did cause damage to JAFFE'S finances and health and well being.

116.     JAFFE has a direct and proximate breach of warranty claim, herein alleged, and has been damaged as a result of the Defendants' breach of warranty.

117.     For DAMAGES requested see DAMAGES SECTION which follows.

### SIXTH CAUSE OF ACTION

### CONVERSION

118.     JAFFE incorporates by reference paragraphs 75 thru 117 and all the following paragraphs of this complaint as if fully set forth.

119.     JAFFE received fraudulent bills for water/sewage/trash services to his apartment from the inception of his rental agreement with EMPIRIAN/ISTA to date and on going. JAFFE paid the bills as they came due not knowing they were fraudulent.

120.     JAFFE requested an explanation of the fraudulent billings from the Defendants and he can not get a reply which necessitates this lawsuit. The defendants overcharged JAFFE for water/sewage/trash services and they have converted the funds not due them for their own purposes. As a result of said conversion JAFFE has a direct and approximate claim, herein alleged and has been damaged as a result of the Defendants' conversion.

41

121.        For DAMAGES requested see DAMAGES SECTION which
follows.

### III. MALICIOUS PROSECUTION AND RELATED CLAIMS EVENTS (this is the third event section, of a total of three; and related causes of action. excludes Isla and its employees).

121 A.        Exhibit page 45 is the offer to grant JAFFE one month free rent

if he extends his present rental agreement. JAFFE did know what he wanted to do when

he received said offer but he talked to another tenant and she said that they did not fool

around as they did in the past and that they only had to sign a one page document and it

was over with. At this time JAFFE'S apartment was under control and he did not use

most of the outside grounds for reasons previously given and he had only been living

there for five months as it took a sum of time to straighten out the original move in. The

rent amount was OK and he could amortize his troubles across another eighteen months

by renewing the lease. It did make some sense. JAFFE then accepted the offer on 8/13/08

and faxed to EMPIRIAN on this date (Exhibit page 45). The offer simply states that if

you renew today you get one month free rent. The free rent is for renewing and not for

anything else.

122.        Exhibit page 46 is the renewal lease extension form signed by both

parties. The free rent was calculated as $679 ( note that there is no date for

free rent as it is a reward for renewing/extending the existing lease-the

commencement of the lease term takes place after the old lease runs out

but the free rent is immediate). There is no date when this was signed.

This lease took place at EMPIRIAN, with the leasing agent by the name of

Jonathan Coates and JAFFE being the only ones present. No one else was present. Mr. Coates told JAFFE that he could use the free rent in lump sum and/or he could amortize it across the whole lease and that the free rent started immediately. Mr. Coates pointed out that this was the reason there were no dates next to the free rent on the agreement to extend. JAFFE told Mr. Coates that he was not sure of what he wanted to do and Mr. Coates requested that JAFFE inform him in advance of his final decision as to how he wanted to handle the free rent. That concluded the meeting. There is/was no new lease but just an extension of the old one.

123.     Exhibit page 47 evidences that JAFFE paid his normal rent on 8/26/08 and informed EMPIRIAN that he would be taking his free rent on or before 10/1/08 and that he would be paying the $28.17 difference at that time (Exhibit page 48). This notice was enclosed with his normal rents check. The notice and check was put into EMPIRIAN'S night drop on 8/26/08 and this was witnessed by JAFFE'S son Jonathan Jaffe (Exhibit page 49). JAFFE thought that this was prudent given EMPIRIAN'S problems as evidenced by the prior TORTS found in this complaint.

124.     Exhibit page 50 evidences that JAFFE paid his rent due by money order on 9/27/08 and noted that this was for rent due. This coincides with Exhibit pages found in paragraph 115-123 above. This money order was cashed by EMPIRIAN; completing the contract they had between them.

125.     Exhibit page 51 evidences that JAFFE received a phone call from BRENDER on 9/30/08 in which she explained to him that he could take

his free rent in lump sum and/or up front. JAFFE replied in writing that he

already knew what they were saying and that he had already paid his rent

and thanked them for their phone call (exhibit page 51).

126.     Exhibit page 52  is the next response from BRENDER on

10/2/08. It stated that they breached their contract with JAFFE and that

they had stolen his rent monies that were paid; and that he had five days to

pay them more.

127.     Exhibit pages 53-54 is JAFFE'S response to their five day notice.

JAFFE, basically, stated that they were breaching their contract with him

and that they were stealing monies from him. And that if the filed any

complaints JAFFE would be seeking additional damages for abusive

process and a counter claim for conversion and contact violations et al;

and also seek a criminal fraud/theft claim against them.

128.     Exhibit page 55 is EMPIRIAN'S next response, through their

attorney, Andrew Hull. Their claim was that they had no contract with

JAFFE to take free rent in October of 2008; and no one told JAFFE that he

could. There was no mention of the theft of funds and/or the prior written

notice memorializing Mr. Coates and JAFFE'S agreement that he could

take the free rent at any time. Mr. Hull seemed to be just a talking head

repeating his client's claims. As later noted he proved to be a conspirator.

129.     Exhibit page 56  is JAFFE'S response to Mr. Hull. JAFFE again

claims that they are breaching their contract with him and that they are

stealing his money and that JAFFE would seek civil and criminal charges

against all of them if they continue in this matter. This was sent in the mid

day of 10/16/08.

130.      By this time EMPIRIAN had JAFFE'S request to ISTA asking for

verifications of their fraudulent water/sewage/trash charges and noticed

his discussions with other tenants. This surely must have played a role in

all the following abusive litigation which wasted everyone's time and had

a toll on JAFFE'S health and monies.

131.      Some time in the late afternoon of 10/16/08 the summons and

forcible detainer complaint was placed on JAFFE'S door (Exhibit page

57). Note that it was so rushed one could not read the case number and

JAFFE had to call the COURT to get same. Also the date and time of the

person who served it is missing. It does not matter if they violate the law;

they will conspire to defraud and file abusive calms, as they are doing,

until a COURT stops them.  Hopefully it is this COURT as JUSTICE

COURT decided not to become that involved.  JUSTICE COURT denied

JAFFE'S counter-claim and implied that it be filed later in Superior Court.

132.      There were two hearings.  At the first one JAFFE was denied any

right to discovery. A one week extension was granted EMPIRIAN. At the

second hearing JAFFE was denied his right to a jury trial; and a week

extension to provide witnesses to evidence perjury on behalf of

EMPIRIAN was also denied. No extensions for JAFFE. Trial to be held

the next day.

133.     The trial was held the next day and lasted about one hour. The

forcible Detainer was denied as the contract they were litigating on had no

merit for the COURT.  Even in an unfair trial JAFFE'S rights were

upheld. The Defendants complaint was that offensive. The complaint was

totally without merit and the litigation was outrageous, abusive and

malicious; and only designed to remove JAFFE from his apartment along

with his cat so that this herein complaint could not be filed (the order was

not available at the time of writing this complaint).

134.     JAFFE could not prove the perjury committed by Coates at the

first trial; and JAFFE is hopeful that this can be done at this time in this

case. Time to subpoena witnesses was all that was needed and this was

denied.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### MALICIOUS PROSECUTION

135.     JAFFE incorporates by reference paragraphs 121 A thru 134 and

all following paragraphs of this complaint as if fully set forth.

136.     The EMPIRIAN filed a complaint against JAFFE in Justice Court

in Phoenix Arizona in October of 2008 with full knowledge that the

complaint was false from the inception.

137.     The complaint relied upon perjury and fraudulent information; and

its only intent was to remove JAFFE from his home so that he would not

uncover all the TORTS and LAWS that the Defendants have, and are

committing at their property (See paragraphs 1 thru 134 and all that follows). Their actions were purposeful, intended, outrageous, malicious and abusive to the judicial system.

138.      As a direct proximity result of the defendant's malicious prosecution, Plaintiff suffered emotional and bodily injury (elevated hypertension, loss of sleep et al), experienced pain and suffering (fearing that he and his cat would be evicted from their home) and monetary damages.

139.      For damages requested see DAMAGE section following this section.

## SECOND CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

140.      JAFFE incorporates by reference paragraphs 121 A thru 139 and all following paragraphs of this complaint as if fully set forth.

141.      During the course of JAFFE'S contractual relationship with the EMPIRIAN, for apartment rental services; all defendants misrepresented their apartment rental services by offering JAFFE one month's free rent to renew his lease and then decided on their own to rescind the offer by trying to evict JAFFE from same. The EMPIRIAN stated that they would perform the services that JAFFE bought, and that they contracted to provide, in a manner dictated by the contract (without TORTS committed). This was a fraudulent statement.  They must have known and/or should have known that their contract with JAFFE was not as

presented to him and that said faults could and would cause JAFFE harm; and they failed to mention same.

142.    There is/was an implied warranty that they would not commit TORTS when JAFFE agreed to EMPIRIAN'S services; EMPIRIAN'S warranty was obviously fraudulent. Their fraudulent statements and actions speak for themselves; and this goes to the heart of this case. They are simply frauds trying to get rich at the expense of their tenants; and when one finds out about the deceptions they evict the party.

143.    EMPIRIAN stated that they would abide by all contracts, statements et al, both verbal and written, as to the apartment rental service provided. This is/was a fraudulent statement.

144.    EMPIRIAN'S statements, implied and in writing, that no harm would come to JAFFE, by the use of their services, was a fraudulent statement.

145.    EMPIRIAN'S statements, implied and in writing, that they would tell the truth and not conceal and conspire to provide defective and/or below acceptable rental services, was a fraudulent statement.

146.    EMPIRIAN put JAFFE into a high risk situation, without notifying him of their intended actions before they committed them. They must have known of their problems before hand, or should have known of same, as measured by how many complaints and law suits they are involved in; and they failed to notify JAFFE of same.

presented to him and that said faults could and would cause JAFFE harm; and they failed to mention same.

142. There is/was an implied warranty that they would not commit TORTS when JAFFE agreed to EMPIRIAN'S services; EMPIRIAN'S warranty was obviously fraudulent. Their fraudulent statements and actions speak for themselves; and this goes to the heart of this case. They are simply frauds trying to get rich at the expense of their tenants; and when one finds out about the deceptions they evict the party.

143. EMPIRIAN stated that they would abide by all contracts, statements et al, both verbal and written, as to the apartment rental service provided. This is/was a fraudulent statement.

144. EMPIRIAN'S statements, implied and in writing, that no harm would come to JAFFE, by the use of their services, was a fraudulent statement.

145. EMPIRIAN'S statements, implied and in writing, that they would tell the truth and not conceal and conspire to provide defective and/or below acceptable rental services, was a fraudulent statement.

146. EMPIRIAN put JAFFE into a high risk situation, without notifying him of their intended actions before they committed them. They must have known of their problems before hand, or should have known of same, as measured by how many complaints and law suits they are involved in; and they failed to notify JAFFE of same.

147.     When EMPIRIAN made the above described representations of fact to plaintiff, JAFFE had no reasonable grounds for believing that the representations were false; and EMPIRIAN had no reasonable grounds for believing they were true.  EMPIRIAN'S representations were made with the intent that plaintiff rely on them; and plaintiff did reasonably rely on them; all to JAFFE'S detriment.

148.     In making such representations of fact, and suppressing and failing to disclose facts material to JAFFE in his contractual relationship with defendants, as described in paragraphs 1 thru 147 above and all following paragraphs EMPIRIAN negligently misled JAFFE, about their ability to perform, as they represented they would, the services they were providing. EMPIRIAN knew, and/or should have reasonably known, that JAFFE would reply on their representations; and that the JAFFE'S failure to disclose such facts material to plaintiff about their rental services would cause the plaintiff harm. JAFFE did rely on EMPIRIAN'S misrepresentations; and their failure to disclose material facts, all to JAFFE'S detriment. As a direct result and foreseeable result of the EMPIRIAN'S negligent misrepresentations, JAFFE has experienced emotional and physical distress and pain and suffering and monetary damages.

149.     For damagers requested see DAMAGE SECTION following this cause of action section.

**THIRD CAUSE OF ACTION**

49

## BREACH OF CONTRACT

150.     JAFFE incorporates by reference paragraphs 121 A thru 149 and

all following paragraphs of this complaint as if fully set forth.

151.     In December of 2007 EMPIRIAN and JAFFE entered into a rental

contract, by which Defendants and an extension of said agreement in

August of 2008. Pursuant to the agreement, JAFFE, paid for same.

EMPIRIAN failed to honor the agreement. The total damages claimed will

be shown, according to proof at time of trial.

152.     JAFFE received an eviction notice instead of the EMPIRIAN

upholding their end of the contract, which caused JAFFE severe emotional

and physical distress, and pain and suffering, and loss of income et al,

according to proof at time of trial.

153.     JAFFE has had go through two hearings and a trial with

EMPIRIAN in order for the COURT to order them to uphold their end of

their contract with him. They simply do not respond and/or they respond

with falsehoods. They even tried to evict JAFFE for his actions.

154.     Plaintiff did not contract to receive the TORTS that damaged his

health et al, as found in this complaint, with the Defendants.  The

Defendants violated their contract with JAFFE by committing the TORTS,

as found in this complaint (paragraphs 1 thru 153 above and all that

follows).

155.     JAFFE is informed and believes, at this time, that all of the

TORTS, claimed in this complaint, were intentional; as they knew at the

time of agreeing to provide JAFFE with an apartment rental lease

extension that said apartment rental lease extension was fraudulently

presented. JAFFE was never informed of any of this prior to the signing of

the contract; and then he was subjected to the EMPIRIAN'S TORTS.

156.    EMPIRIAN breached all written and oral agreements that they had

together with JAFFE.

157.    As a direct and proximate result of EMPIRIAN'S breach of

contract, JAFFE has suffered damages emotionally, physically and

monetarily.

158.    For Damages requested see DAMAGE SECTION that follows.

## FOURTH CAUSE OF ACTION

### FRAUD

159.    JAFFE incorporates by reference paragraphs 121 A thru 158 and

all following paragraphs of this complaint as if fully set forth.

160.    On or about December 22, 2007 EMPIRIAN, and in August 2008,

with on going agreements to date forward, JAFFE entered into said

agreements with EMPIRIAN for an apartment rental, because EMPIRIAN

represented to JAFFE that they could and would provide and abide by the

terms of their contract with him; and that their services would not damage

his income and/or health and/or safety et al. These guarantees were

explicit/implicit in the rental agreements. JAFFE is informed, and now

believes, and on the basis of such information and beliefs, that the true

facts, as are detailed in paragraphs 1 thru 159 above and all following

paragraphs, that EMPIRIAN knew that they could not and would not honor said contract. They entered into the agreement in order to get JAFFE'S money; and they would say and do anything to get money from anyone. And they would do anything to save costs; up to and including the commission of the Fraud found in this complaint. JAFFE was simply a straw; and they went on to DAMAGE JAFFE, according to proof at time of trial.

161.      When EMPIRIAN made their representations, they knew them to be false; and these representations were made by EMPIRIAN with the intent to defraud and deceive JAFFE to act in a manner herein alleged. They violated the rental contract. They did nothing that they claimed they would do; and this was done intentionally to get JAFFE'S money and then evicting him.

162.      JAFFE, at all times of the aforementioned representations were made by EMPIRIAN, believed them to be true; and therefore was induced to, and did allow EMPIRIAN to provide an apartment for him; and to pay them for same. In the end the rental services caused the JAFFE Damages according to proof at time of trial; and in addition to the monetary issues, JAFFE has also suffered emotional and physical damages and pain and suffering. Had JAFFE known the actual facts about EMPIRIAN'S services et al, he would not have contracted for same. JAFFE'S reliance upon EMPIRIAN'S representations was justified as they provided no information to the contrary.  It is/was unfathomable to JAFFE that

EMPIRIAN would risk so much for so little return. EMPIRIAN has

proven that they are reckless beyond belief; and that they are belligerent in

their belief that they can get away with anything.

163.        For Damages see DAMAGE SECTION which follows.

## FIFTH CAUSE OF ACTION

## CONCEALMENT

164.        Plaintiff incorporates by reference paragraphs 121 A thru 163 and

all following paragraphs in this complaint as if fully set forth.

165.        On or about December 22, 2007, and on August 13, 2008, with on

going agreements to date forward, JAFFE entered into a contract for an

apartment rental with the defendants; and they made representations to

JAFFE that they would/could abide by the terms and conditions of said

agreement; and they did not as mention the events found in paragraphs 1

thru 156 above; and all following paragraphs below. At all times that

JAFFE was subjected to the EMPIRIAN'S TORT actions, herein alleged,

JAFFE was ignorant of the existence of the facts that the EMPIRIAN had

suppressed, and or failed to disclose.  If JAFFE had been aware of the

existence of the facts, not disclosed by EMPIRIAN, he would not have

entered into any contractual relationship with them for any type of

services what so ever.

166.     JAFFE'S reliance upon EMPIRIAN'S false and misleading representations has caused JAFFE severe emotional and physical and monetary damages.

167.     For damages requested see damage section which follows.

## SIXTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

168.     JAFFE re-alleges each and every allegation contained in paragraphs 121 A thru 167 and all following paragraphs in this complaint as if fully set forth herein.

169.     JAFFE accepted EMPIRIAN'S tender of apartment rental services.

170.     At all times of the aforementioned contract for apartment rental services, but before the agreements were consummated between the parties, as an inducement to JAFFE to purchase said apartment rental services, and as apart of the basis of the bargain of the parties that culminated in the making of the agreements, and to accept same, EMPIRIAN warranted that the services would not be safe and secure and not hazard filled, and dangerous to the JAFFE'S health et al; and that JAFFE would receive one month's free rent for agreeing to extend his lease. And that their services would conform to their affirmations. Their warranties were fraudulent.

171.     Plaintiff agreed to purchase said services, and agreed to accept said services from the Defendants, in reliance upon each of said

warranties, affirmation of facts, and/or promises made by the Defendants, as herein set forth in this complaint. Plaintiff has fully performed all the conditions and covenants of the agreements on Plaintiff's part to be performed.

172.        After signing the contract with the Defendants, Plaintiff received an eviction notice and had to go to two hearings and a trial to have a COURT order them to abide by their contract with him; and not evict him And his cat from his home. The services, provided by the Defendants were outrageous, malicious and vindictive; as well as were sub-human, unsafe, hazard filled and dangerous to JAFFE'S safety/health and well being ( the fear of loosing your home is not an easy thing to contemplate when it is you and your cat of nine years).

173.        On or about 09/08 onward, which was a reasonable time after ` JAFFE first suspected that anything was wrong, not fully understanding the full depths of the deceit, lies, cheating and cover-up until this herein date, began after JAFFE tried to console other tenants and help them with living at the complex.. EMPIRIAN does not respond to complaints and when they do, the damages have been done and/or they try to get rid of the complaining party. EMPIRIAN had refused to reply to any/all requests for normalcy and/or have provided falsehoods and/or simply do not seemed to be concerned; all in all, they are adamant in being sued before providing any relief.

174.    JAFFE is informed and believes, and based on such information and beliefs, alleges that at the time and place of the acceptance of the purchase of services from EMPIRIAN, the services that were tendered, were fraudulent and would/did cause damage to the Plaintiff's safety, health and well being.

175.    JAFFE has a direct and proximate breach of warranty claim, herein alleged, and has been damaged as a result of the EMPIRIAN'S breach of warranty.

176.    For DAMAGES requested see DAMAGES SECTION which follows.

**************************************************************************

### THIS COMPLAINT FULLY COMPLIES WITH RULE 8 AND 9.

The Defendants know what they have done to cause this complaint to occur satisfying Rule 8; and it is pled with enough specificity to comply with Rule 9 for Fraud et al, in both the Civil and Criminal meaning of the cause of action, which necessitates the length and segmenting of this complaint. Also, Rule 9 is supported in this complaint by documents that evidence that the acts of the Defendants were done wantonly and maliciously, with full prior knowledge of the wrongness of their actions, and that their actions would create harm.

**************************************************************************

### DAMAGES

## MEDICAL DAMAGES, IN MONEY, EMOTIONAL AND BODILY HARM
### NOTE

177.    Emotional distress, such as JAFFE had endured at the hands of the

Defendants, caused his hypertension to be aggravated, and he had to take

additional medication for same. The 2007 onward CONTRACT AND

TENANT ACT VIOLATIONS / TORTS of the Defendants have

accumulated into JAFFE'S life; and they have acerbated his medical

conditions. It should be self evident that someone who is being put under

the strain that these Defendants have put JAFFE under, that those actions

would acerbate any medical condition which he has (e.g. hypertension).

### EMPLOYMENT DAMAGES NOTE

178.    Dr. JAFFE is a Doctor engaged in high level Management

Consulting for close to thirty years; and he has been trained by the elite in

his profession. Taking his time with one problem after another because of

the Defendants actions warrants a substantial award against the

Defendants for their 2007 onward CONTRACT AND TENANT ACT

VIOLATIONS / TORTS.  The employment damages are estimated in the

thousands of dollars according to proof at time of trial.


### FURTHER MONETARY DAMAGES NOTE

One should note that the Corporate Defendants are gigantic multi-billion

dollar corporations fully willing to put US Citizens in harms way for profits.

And in some cases they are acting across continents to do so. When

awarding Punitive and Exemplary et al damages the size and premeditation of the Defendants must be taken into account.  They are risking lives for a dollar and must be sanctioned accordingly.

### FOR ALL CAUSES OF ACTION

**Actual, Compensatory, Punitive, Exemplary, Pain and Suffering damages, according to proof at time of trial, will be sought against all the defendants. Also the Costs of Suit, Legal interest, to include pre-judgment amounts, and for all other relief as the COURT deemed fit will also be sought against each and very Defendant.**

### DECLARATORY RELIEF

A.  For declaratory relief to report the criminal mail fraud claim (28 USCS 2680) to the Attorney General of the United States for criminal investigation. JAFFE cannot make a claim for damages for same; but it is self evident that this took place and the COURT'S referral will expedite the termination of this on-going criminal act.

B.  For declaratory relief to appoint an expert master panel to oversee EMPIRIAN'S violations of ARS 33-1324, in order to bring the building into compliance with governmental codes, so that the health and safety of all the tenants can be protected. And to sanction EMPIRIAN for non-compliance to same. They cannot and/or will not do so on their own.

C.  For declaratory relief to terminate the Defendants billings for water/sewer and trash collection, as an addition to rent, because they cannot calculate the true

charges to each unit.   And to refund all said charges to each and every tenant,

from the time they purchased the apartment complex in 2004, to date.

### REQUEST FOR JURY TRIAL

A.  A request for jury trial is hereby requested.


This complaint is respectfully submitted by

Sol Jaffe

Plaintiff in pro per

DATED: 11/30/08

I, Sol Jaffe, declare as follows:

I am the plaintiff in the above entitled action. I have read the above complaint and know

its contents.  The matters stated in the complaint are true of my own knowledge, except

for those items which are alleged on my own information and belief; and as to those

items, I believe them to be true.  I, Sol Jaffe, declare under the penalty of perjury, under

the laws of the United States of America and the State of Arizona, that the above is true

and correct.

Executed on 11/30/08

Sol Jaffe

## COMPLAINT AGAINST DEFENDANTS FOR THE FOLLOWING

1. Against EXPERIAN/BUSH and related all individuals to same (ISLA and all related defendants are excluded from same) for causes of action related to violations of the landlord tenant act/contracts and related TORTS:

   1. Violations of Arizona Statutes, Title 33, Chapter 10.
   2. Gross Negligence
   3. Negligent Representation.
   4. Breach of Contract
   5. Fraud
   6. Concealment
   7. Breach of Express Warranty

**********************************************************************

2. Against ALL DEFENDANTS for causes of action related to water/sewage/trash fraud and 28 USCS 2680.

   1. Negligent Misrepresentation
   2. Breach of Contract
   3. Fraud
   4. Concealment
   5. Breach of Express Warranty
   6. Conversion

**********************************************************************

3. Against EXPERIAN/BUSH and all related individuals to same (ISLA and all related defendants are excluded from same) for causes of action related to a malicious and fraudulent complaint being filed against JAFFE.

   1. Malicious prosecution.
   2. Negligent Representation
   3. Breach of Contract
   4. Fraud
   5. Concealment
   6. Breach of Express Warranty

4. This case involves multi-national companies in many states and countries of the world and it is impossible to find all the Defendants without discovery taking place. At this time they are named as Does 1-100.

**********************************************************************

OTHER ISSUES - COMPLAINT FOR:
   1. Actual and Compensatory damages

1

2. Exemplarity and Punitive damages
3. Pain and Suffering damages.
4. Other damages as the Court may Find for additional Relief.
5. Declaratory Relief
6. For Costs of Suit incurred
7. For Legal Interest, to include pre-judgment attachment
8. For such other relief as the Court deems fit
9. **Request for Jury Trial**

The Defendants and their actions are segmented under a specific global cause of action
(There are three global sets of actions which all have separate causes assigned to them).
This, JAFFE believes is the simplest way to present the claims against all the Defendants
because of the complexity of dealing with global conspiracies and defendants who are
fully loaded with legal defenses to hide their TORTS and Criminal and Civil Law
violations.

2a